# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF OHIO
# EASTERN DIVISION

| | |
|---|---|
| **CARI ECK,** <br> c/o her attorneys Tittle & Perlmuter <br> 4106 Bridge Avenue <br> Cleveland, OH 44113 <br><br> On behalf of herself and all others similarly situated, <br><br> Plaintiff, <br><br> v. <br><br> **AAA STAFFING, LLC** <br> c/o Statutory Agent <br> Alison Alvino <br> 6505 Market Street <br> Boardman, Ohio 44512 <br><br> and <br><br> **RAE-ANN WESTLAKE, INC. d/b/a/** <br> **RAE-ANN WESTLAKE NURSING** <br> **AND REHABILITATION** <br> c/o Statutory Agent <br> Jonathen Gewirtz <br> 28303 Detroit Road <br> Westlake, Ohio 44145 <br><br> and <br><br> **JOSEPH FRIEDMAN** <br> 188 Benjamin Street <br> Toms River, New Jersey 08755 | CASE NO. <br><br> JUDGE <br><br> **PLAINTIFF'S CLASS AND** <br> **COLLECTIVE ACTION COMPLAINT** <br> **UNDER THE FAIR LABOR** <br> **STANDARDS ACT AND STATE LAW** <br> **WITH JURY DEMAND** |

Plaintiff Cari Eck ("Plaintiff"), through counsel, for her Class and Collective Action Complaint against Defendants AAA Staffing, LLC, Rae-Ann Westlake, Inc. d/b/a Rae-Ann

Westlake Nursing and Rehabilitation ("Rae-Ann Westlake"), and Joseph Friedman (collectively "Defendants"), states and alleges as follows:

## INTRODUCTION

1. This case challenges Defendants' timekeeping and pay practices by which they willfully violated their employees' rights under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201-219, and Ohio's common law of unjust enrichment.

2. Plaintiff brings this case as an FLSA "collective action" pursuant to 29 U.S.C. § 216(b), which provides that "[a]n action to recover the liability" prescribed by the FLSA "may be maintained against any employer . . . by any one or more employees for and on behalf of himself or themselves and other employees similarly situated." Plaintiff brings this case on behalf of herself and other "similarly situated" persons who may join the case pursuant to § 216(b) (the "Potential Opt-Ins").

3. Plaintiff also brings this case as a class action pursuant to Fed. R. Civ. P. 23 on behalf of herself and other members of one class of persons (the "Class Members"), defined herein below, who assert factually related claims under Ohio's common law of unjust enrichment.

## JURISDICTION AND VENUE

4. This Court has jurisdiction over Plaintiff's FLSA claims pursuant to 28 U.S.C. § 1331 and 29 U.S.C. § 216(b).

5. This Court has supplemental jurisdiction over Plaintiff's state-law claims because those claims are so related to the FLSA claims as to form part of the same case or controversy.

6. Venue is proper in this judicial district and division pursuant to 28 U.S.C. § 1391(b) because one or more Defendants reside in this district and division, all Defendants have conducted continuous business at various skilled nursing facilities within the territorial jurisdiction of this

Court, including the facility at which Plaintiff worked, and a substantial part of the events or omissions giving rise to Plaintiff's claims occurred in this district and division.

## PARTIES

7. At all times relevant, Plaintiff Cari Eck was a citizen of the United States and a resident of Cuyahoga County, Ohio and, as described below, an employee of all Defendants, working at Defendants' skilled nursing and rehabilitation facility known as Rae-Ann Westlake, located at 28303 Detroit Road, Westlake, Ohio, 44145.

8. Defendant AAA Staffing, LLC ("AAA Staffing") is a domestic limited liability company headquartered in Mahoning County, Ohio that promulgates employment policies and procedures governing employment practices at Rae-Ann Westlake and numerous other nursing facilities throughout the State of Ohio for non-exempt employees, including Plaintiff. AAA Staffing also serves as the W-2 employer for non-exempt employees at various nursing facilities throughout the State of Ohio, including Plaintiff. According to records maintained by the Ohio Secretary of State, AAA Staffing's statutory agent for service of process is Alison Alvino, 6505 Market Street, Boardman, Ohio 44512. According to further records maintained by the Ohio Secretary of State, the entity that filed AAA Staffing's Articles of Organization is located at 188 Benjamin Street, Toms River, New Jersey, 08755.

9. Defendant Rae-Ann Westlake, Inc. d/b/a Rae-Ann Westlake Nursing and Rehabilitation was and is an Ohio corporation headquartered in Cuyahoga County, Ohio which, at all times relevant, in conjunction with the other co-Defendants, conducted the operations at Rae-Ann Westlake. According to records maintained by the Ohio Secretary of State, its statutory agent for service of process is Jonathen Gewirtz, 28303 Detroit Road, Westlake, Ohio, 44145.

10. Defendant Joseph Friedman is an individual and a resident of Ocean County, New Jersey, residing at 188 Benjamin Street, Toms River, New Jersey, 08755 – i.e., the location from which AAA Staffing's corporate filings were issued. Individually and through ownership interests in various business entities, including the co-Defendants, Defendant Friedman owns and operates multiple skilled nursing facilities throughout Ohio, including in the Rae-Ann Geneva Skilled Nursing and Rehabilitation, Rae-Ann Suburban Nursing and Rehabilitation, Rae-Ann Center, Oasis Center for Rehabilitation and Healing, and Beeghly Oaks Center for Rehabilitation and Healing.

## FACTUAL ALLEGATIONS

### Defendants' Statuses As "Employers" of Plaintiff and Those Similarly Situated

11. Defendant AAA Staffing was an "employer" of Plaintiff within the meaning of the FLSA, 29 U.S.C. § 203(d), as it is listed as Cari Eck's employer on her W-2.

12. Defendants Rae-Ann Westlake, Inc. and Joseph Friedman were also "employers" of Plaintiff within the meaning of the FLSA, 29 U.S.C. § 203(d), in that they had authority to, and did in fact, promulgate work rules, payroll rules, and assignments, and to set the employees' conditions of employment.

13. Defendants were all "employers" of Plaintiff, the Potential Opt-Ins, and the Potential Class Members pursuant to 29 U.S.C. § 203(d) in that they "act[ed] directly or indirectly in the interest of an employer in relation to . . . employee[s]," including Plaintiff, the Potential Opt-Ins, and the Class Members.

14. At all times relevant, Defendants were, individually and jointly, an enterprise within the meaning of 29 U.S.C. § 203(r), and an enterprise engaged in commerce or in the production of goods for commerce within the meaning of 29 U.S.C. § 203(s)(1).

### Defendants' Joint Enterprise of Nursing Home Ownership/Operation and Formation of an Integrated Enterprise

15. Defendant AAA Staffing and Rae-Ann Westlake, through their ownership and control by Defendant Joseph Friedman, operate as a common business enterprise by directly and indirectly owning, operating, and managing, including through their affiliates and subsidiaries, three skilled nursing and rehabilitation centers throughout northeast Ohio, including Rae-Ann Westlake Rae-Ann Geneva Skilled Nursing and Rehabilitation, Rae-Ann Suburban Nursing and Rehabilitation, Rae-Ann Center, Oasis Center for Rehabilitation and Healing, and Beeghly Oaks Center for Rehabilitation and Healing.

16. Defendant Joseph Friedman has control over operations and day-to-day functions of the nursing facilities listed in Paragraph 15 through his ownership and/or management of the business entities that operate those facilities, like Defendant Rae-Ann Westlake, Inc.

17. Defendant Joseph Friedman has control over the hiring, firing, and daily supervision of all of the employees working at the nursing facilities listed in Paragraph 15 through his ownership and/or management of the companies serving as the W-2 employers of those employees, like Defendant AAA Staffing.

### Defendants' Employment of Plaintiff, the Potential Opt-Ins, and Class Members

18. Plaintiff was employed by Defendants from September 2022 through December 2023 as a State Tested Nurse Aide ("STNA"), a position that was paid on an hourly basis and was non-exempt from overtime pay.

19. The FLSA and Ohio law required Defendants to pay its non-exempt employees for all hours they were "suffer[ed] or . . . permit[ted] to work." 29 U.S.C. § 203(g); O.R.C. § 4111.03(D)(1).

20. Additionally, under the FLSA and Ohio law, an "employee must be completely relieved from duty" for a "meal period" to be non-compensable. 28 C.F.R. § 785.19(a). A meal break is not considered a bona fide meal period if the employee "is required to perform any duties, whether active or inactive, while [on break]." *Id*.

21. AAA Staffing's Employee Handbook reflects the law, providing, "non-exempt employees are entitled to . . . a 30-minute meal break for any shift lasting longer than five hours."

22. Defendants' employees, including Plaintiff, used a time clock software, Sling, to clock in and out.

23. Defendants discouraged STNAs, including Plaintiff, from taking meal breaks at Rae-Ann Westlake because there was insufficient staff to cover the shifts.

24. Defendants routinely failed to staff the Defendants' facilities with sufficient employees to permit those working to take an uninterrupted meal break every shift.

25. Although non-exempt employees, including Plaintiff, were required to work at the Rae-Ann Facilities without taking an uninterrupted meal break every shift, Defendants nevertheless edited non-exempt employees' time records, including Plaintiff's, to input (30) minute daily meal breaks that were not actually taken.

26. Moreover, Defendants regularly scheduled employees, including Plaintiff, to work 40 hours or more per workweek.

27. The FLSA required covered employers to pay non-exempt employees overtime compensation at one and one-half times their "regular rate" for all hours worked in excess of forty hours per workweek. 29 U.S.C. § 207.

28. Plaintiff and the Potential Opt-Ins were all non-exempt from overtime pay under 29 U.S.C. § 207.

29. Unless excludable under 29 U.S.C. § 207(e), employers must include "all remuneration for employment paid to, or on behalf of, the employee" in calculating an employee's regular rate of pay.

30. Defendants regularly and systematically failed to include all forms of compensation in calculating the regular rate of pay and overtime premium calculations for Plaintiff and the Potential Opt-Ins.

31. Defendants' practice of miscalculating employees' regular rate of pay had the effect of circumventing the payment of proper overtime compensation, and is provable by examining the affected employees' payroll records and data.

32. For instance, Plaintiff and the Potential Opt-Ins received various types of compensation for their work, such as:

(a) A base hourly wage;

(b) Hourly shift differentials during specified hours; and

(c) Bonuses for picking up certain extra shifts.

33. All of the types of compensation listed in Paragraph 32 must be included in calculating an employee's "regular rate of pay." Defendants engaged in a pattern, practice, or policy of violating the FLSA with respect to Plaintiff by failing to include one or more of these forms of payment in calculating Plaintiff's regular rate of pay under 29 U.S.C. § 207 and O.R.C. § 4111.03.

34. Plaintiff's timesheets and pay stubs illustrate this practice. By way of example, Plaintiff's pay advice dated May 25, 2023 (depicted below), for the workweek of May 14 to May 20, 2023, reflects an overtime rate of $36.00 per hour:



35. That week, Plaintiff worked 50.57 hours, all of which were subject to her $24.00/hr. base hourly rate. 24.67 hours were subject a $1.00/hr. shift differential and 13.25 hours were subject to a $4.00/hr. "BOOST." Hence, her overtime rate should have been $36.74 and her overtime pay should have been $388.76. She was underpaid by about $8 during this workweek alone.

36. By way of further example, Plaintiff's pay advice dated May 19, 2023 (depicted below), for the workweek of May 7 to May 13, 2023, reflects an overtime rate of $36.00 per hour:



8

37. That week, Plaintiff worked 48.24 hours, all of which were subject to her $24.00/hr. base hourly rate. 24.08 hours were subject a $1.00/hr. shift differential. Hence, her overtime rate should have been $36.24 and her overtime pay should have been $299.06. She was underpaid by about $2.06 during this workweek alone.

38. Every week, among the over 1,000 hourly employees working at Defendants' facilities, through the practices described above, Defendants unlawfully withheld and pocketed many thousands of dollars of overtime compensation due and owing to those employees.

39. As a result of practices such as those above, Defendants knowingly deprived Plaintiff and similarly situated non-exempt employees of regular and overtime pay.

**The Willfulness of Defendants' Violations**

40. Defendants knew that Plaintiff and the Potential Opt-Ins were entitled to compensation for all hours worked and overtime compensation for hours over 40 in a workweek under both federal and state law, or acted in a reckless disregard for whether they were so entitled.

41. Defendants intentionally and willfully circumvented the requirements of the FLSA. Defendants designed their scheduling, timekeeping, and payroll policies and practices in an attempt to reduce employees' paid hours and circumvent federal and state wage-and-hour laws.

42. Defendants knew that non-exempt employees regularly and routinely worked without meal breaks, and intentionally failed to establish a reasonable process for reporting missed meals.

43. Thus, with actual knowledge that non-exempt employees were required to work through meals, Defendants persisted with an unreasonable process for reporting missed meal breaks.

44. Defendants further intentionally setup their payroll so as to miscalculate employees' regular rates of pay, with actual knowledge that they were underpaying employees' overtime wages.

## **COLLECTIVE ACTION ALLEGATIONS**

45. Plaintiff incorporates by reference the foregoing allegations as if fully written herein.

46. Plaintiff brings this case as an FLSA "collective action" pursuant to 29 U.S.C. § 216(b), which provides that "[a]n action to recover the liability prescribed [by the FLSA] may be maintained against any employer . . . by any one or more employees for and on behalf of themselves and other employees similarly situated."

47. The Potential Opt-Ins who are "similarly situated" to Plaintiff with respect to Defendants' FLSA violations consist of:

> All non-exempt employees who worked one or more forty-hour workweeks at any of Defendants' Facilities during the period three years preceding the commencement of this action to the present.

48. Such persons are "similarly situated" with respect to Defendants' FLSA violations in that all were subject to and injured by Defendants' unlawful timekeeping and payroll practices, and all have the same claims against Defendants for unpaid overtime compensation, as well as for liquidated damages, attorneys' fees, and costs.

49. Conditional certification of this case as a collective action pursuant to 29 U.S.C. § 216(b) is proper and necessary, and therefore all such persons must be sent a Court-authorized notice informing them of the pendency of the action, giving them the opportunity to "opt in."

50. Upon information and belief, the number of similarly situated persons exceeds 500 persons.

## CLASS ACTION ALLEGATIONS

51. Plaintiff incorporates by reference the foregoing allegations as if fully written herein.

52. Pursuant to Fed. R. Civ. P. 23, Plaintiff also brings this case on behalf of herself and other members of two proposed classes. The first is defined as:

> All current and former non-exempt employees of AAA Staffing during the four years preceding the commencement of this action to the present who were subject to automatic meal break deduction policies in any workweek.

53. The second proposed class is defined as:

> All current and former non-exempt employees of AAA Staffing during the four years preceding the commencement of this action to the present who worked more than 40 hours during any work week and were paid, in addition to their base hourly rate, any non-excludable remuneration.

54. The classes are so numerous that joinder of all Class Members is impracticable. Plaintiff avers, upon information and belief, that each class totals more than 500 employees of Defendants. The number of Class Members, as well as their identities, are ascertainable from records Defendants have maintained and were required to maintain pursuant to the FLSA and Ohio law. 29 U.S.C. § 211(c) & 29 C.F.R. § 215.2; Ohio Const. art. II, § 34a.

55. Plaintiff's claims are typical of the claims of other members of the Class Members. Plaintiff's claims arise out of the same uniform course of conduct by Defendants and are based on the same legal theories as the claims of other Class Members.

56. Plaintiff will fairly and adequately protect the interests of the Class Members. Plaintiff's interests are not antagonistic to, but rather are in unison with, the interests of other Class Members. Plaintiff's counsel has broad experience in handling class action litigation, including wage-and-hour litigation, and are fully qualified to prosecute the claims of the Class Members in this case.

57. The questions of law or fact that are common to the Class Members predominate over any questions affecting only individual members. The primary questions that will determine Defendants' liabilities to the class, listed above, are common to the classes as a whole, and predominate over any questions affecting only individual Class Members.

58. A class action is superior to other available methods for the fair and efficient adjudication of this controversy. Requiring Class Members to pursue their claims individually would entail a host of separate suits, with concomitant duplication of costs, attorneys' fees, and demands on court resources. Many Class Members' claims are sufficiently small that they would be reluctant to incur the substantial cost, expense, and risk of pursuing their claims individually. Certification of this case as a class action pursuant to Fed. R. Civ. P. 23 will enable the issues to be adjudicated for all class members with the efficiencies of class litigation.

## **COUNT ONE**
**(FLSA Overtime Violations)**

59. Plaintiff incorporates by reference the foregoing allegations as if fully rewritten herein.

60. Plaintiff brings this claim for violation of the FLSA's overtime provisions on behalf of herself and the Potential Opt-Ins who may join this case pursuant to 29 U.S.C. § 216(b). Plaintiff's written consent to be a party to this action pursuant to § 216(b) is filed herewith.

61. The FLSA required Defendants to pay their non-exempt employees overtime compensation at one and one-half times their "regular rate" for all hours worked in excess of forty hours in a workweek. 29 U.S.C. §§ 206, 207(e)(3); 29 C.F.R. 778.117.

62. Defendants failed to pay overtime compensation to Plaintiff and the Potential Opt-Ins for all hours worked in excess of forty hours in a workweek. As more fully described above,

Defendants, in violation of law, required them to perform unpaid work off-the-clock, including during their unpaid meal breaks.

63. Defendants further failed to pay overtime compensation to Plaintiff and the Potential Opt-Ins at one-and-one-half their regular rate of pay. As more fully described above, Defendants, in violation of law, failed to include all remuneration in the regular rate calculation.

64. By engaging in those practices, Defendants willfully violated the FLSA and regulations thereunder that have the force and effect of law.

65. As a result of Defendants' violations of the FLSA, Plaintiff and the Potential Opt-Ins were injured in that they did not receive overtime compensation due to them pursuant to the FLSA. Section 216(b) of the FLSA entitles them to an award of unpaid overtime compensation, as well as "an additional equal amount as liquidated damages." Section 216(b) further provides that "[t]he court … shall … allow a reasonable attorney's fee to be paid by the defendant, and costs of the action."

## COUNT TWO
**(Ohio Common Law Unjust Enrichment)**

66. Plaintiff incorporates by reference the foregoing allegations as if fully rewritten herein.

67. Plaintiff and the Class Members conferred a benefit upon Defendant AAA Staffing in the form of their labor.

68. With knowledge of that benefit, Defendant AAA Staffing retained money due and owing to its employees as wages under circumstances where it would be unjust to do so without payment.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that the Court:

A. Conditionally certify this case as an FLSA "collective action" pursuant to 29 U.S.C. § 216(b) and direct that Court-approved notice be issued to similarly-situated persons informing them of this action and enabling them to opt in;

B. Certify this case as a class action pursuant to Fed. R. Civ. P. 23 on behalf of Plaintiff and other members of the Proposed Classes;

C. Enter judgment against Defendants and in favor of Plaintiff, the Opt-Ins who join this case pursuant to 29 U.S.C. § 216(b), and the Class;

D. Award compensatory damages to Plaintiff and the Opt-Ins who join this case pursuant to 29 U.S.C. § 216(b) in the amount of their unpaid wages and commissions, as well as liquidated damages in an equal amount;

E. Award compensatory damages to Plaintiff and the Class Members in the amount of their wages unjustly retained by Defendant AAA Staffing.

F. Award Plaintiff her costs and attorneys' fees incurred in prosecuting this action and such further relief as the Court deems equitable and just.

Respectfully submitted,

*/s/ Kathleen R. Harris*
Scott D. Perlmuter (0082856)
Kathleen R. Harris (0088079)
4106 Bridge Avenue
Cleveland, Ohio 44113
216-308-1522
Fax: 888-604-9299
scott@tittlelawfirm.com
katie@tittlelawfirm.com

Attorneys for Plaintiff

**JURY DEMAND**

Plaintiff hereby demands a trial by jury on all issues so triable.

*/s/ Kathleen R. Harris*
Scott D. Perlmuter (0082856)
Kathleen R. Harris (0088079)

14